(October 23, 1986)

■ In the Matter of JUDITH A. JACOBS et al., Respondents, v ANN R. OCKER, as Town Clerk of the Town of Oyster Bay, et al., Appellants. (Proceeding No. 1.) In the Matter of JUDITH JACOBS et al., Respondents, v ANN R. OCKER, as Town Clerk of the Town of Oyster Bay, et al., Appellants. (Proceeding No. 2.) —In two consolidated proceedings pursuant to CPLR article 78, *inter alia,* to direct the respondent Town Clerk of the Town of Oyster Bay to place upon the ballot for the general election to be held on November 4, 1986, a proposition to establish a ward system for the election of councilmen in the Town of Oyster Bay, the appeals, as limited by the appellants' briefs, are from so much of a judgment of the Supreme Court, Nassau County (Wager, J.), dated October 15, 1986, as directed that the proposition be placed upon the ballot.

Ordered that the judgment is reversed insofar as appealed

from, on the law, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith.

On September 4, 1986, the petitioners, qualified electors of the Town of Oyster Bay, filed a petition with the Town Clerk of the Town of Oyster Bay for a referendum pursuant to Town Law § 81 (4). The petition, which contained 8,259 signatures, called upon the Town of Oyster Bay and the Town Board of the Town of Oyster Bay to hold an election on the following proposition:

"*Proposition for the establishment of the ward system for the election of councilmen in the Town of Oyster Bay.*

"Shall the ward system for the election of councilmen in the Town of Oyster Bay be established, pursuant to Section 81 of the Town Law of the State of New York?"

Thereafter, two qualified electors of the town, Charles Artale and Edward J. Kennedy, filed general and specific objections to the petition and, in anticipation of a rejection of the petition by the town clerk, the petitioners commenced a proceeding, *inter alia,* to compel the town clerk to place the proposition on the ballot for the forthcoming general election to be held on November 4, 1986.

Following review of the petition, the town clerk invalidated 4,068 signatures contained therein and declared that the remaining 4,191 valid signatures were less than the number required under the Town Law to place a proposition on the ballot, to wit, 5,801 signatures ("five per centum of the total votes cast for governor in said town at the last general election held for the election of state officers", Town Law § 81 [4]). Of the 4,068 signatures invalidated by the town clerk, a total of 1,943 signatures, i.e., those obtained in 1980 and 1982, were invalidated solely on the ground that they had not been obtained within a reasonable time prior to the filing of the petition and were therefore stale. The remaining 2,125 signatures invalidated by the town clerk were rejected on various other grounds. Included in this group were 201 signatures obtained in 1986 which the town clerk invalidated, apparently in reliance on Local Laws, 1966, No. 5 of Town of Oyster Bay, and Election Law former § 6-134 (6) (amended L 1984, ch 434, § 6) on the ground that they had not been obtained within 12 weeks prior to the filing of the petition.

The petitioners thereupon commenced a second proceeding which sought, *inter alia,* to (1) vacate and annul the determination of the town clerk to the extent that the latter had

invalidated the 4,068 signatures, (2) compel the certification of the petition as containing sufficient valid signatures, and (3) place the proposition on the ballot. The objectors Artale and Kennedy were named as respondents in both proceedings. Personal jurisdiction was acquired over Kennedy in the first proceeding and over Artale in the second proceeding.

In its decision, the Supreme Court, *inter alia,* (1) held that the 1,943 signatures obtained in 1980 and 1982 were not stale, that the 201 signatures should not have been invalidated as untimely, and further held that these signatures, when added to the 4,191 signatures found valid by the town clerk, were sufficient in number to place the proposition on the ballot, (2) directed that the proposition be placed on the ballot to be voted upon at the general election to be held on November 4, 1986, and (3) denied an oral motion by Kennedy for leave to interpose a cross petition against the town clerk.

Initially, with respect to the 1,943 signatures on the petition which concededly were obtained in 1980 and 1982, we disagree with the Supreme Court's determination that these signatures were not stale.

The 1,943 signatures obtained during 1980 and 1982, having been affixed to the petition anywhere from four to six years prior to its filing, must be deemed stale under a rule of reason.

The mere passage of such a significant period of time undermines any contention that these signatures evidence present support for placing the proposition on the ballot. Such support must be evidenced by a more recent expression of the required percentage of the eligible electors. We are not persuaded to the contrary by the Supreme Court's analogy to the extended periods of time which have been applied to the ratification of certain proposed amendments to the United States Constitution. Those extended ratification periods were specifically authorized by Congress and in view of the fact that the constitutional ratification process involves the electorate of the entire Nation, rather than that of a unit of local government, the extended periods of time allowed for the completion of the ratification process are not unreasonable.

We agree, however, with the Supreme Court's determination that the 201 signatures which were obtained in 1986 were not invalid under Town Law § 81 (4)* by reason of their purported untimeliness under a six-week standard *(cf.* Election Law § 6-138 [4]). We do not find that the language of Town

---

* For reasons stated, *infra,* Town Law § 81 rather than Local Laws, 1966, No. 5 of Town of Oyster Bay, governs here.

Law § 81 (4), which directs that the signatures be subscribed and authenticated in the manner provided for in the Election Law for the authentication of nominating petitions (Election Law § 6-138), extends to the rigid time requirements contained in subdivision (4) of section 6-138.

Accordingly, we conclude that the Supreme Court was in error in holding that the 1,943 signatures obtained in 1980 and 1982 were not stale. However, since in so holding, the court failed to pass upon the validity of the remaining 1,924 signatures which had been invalidated by the town clerk on grounds other than untimeliness, the matter must be remitted for a judicial determination concerning the validity of those 1,924 signatures.

With respect to the 4,191 signatures which were validated by the town clerk, objector Kennedy moved for leave to interpose a cross petition challenging that determination of the town clerk. The Supreme Court denied Kennedy's motion on the ground that Kennedy was "without * * * standing" to interpose such a challenge. Specifically, the court held that: "although objections were filed by * * * Kennedy and Artale, they are without specific authorization in law. That they were considered by the Town Clerk is perfectly appropriate, as would be the voluntary input of any citizen. However, since there is no procedural equivalent in the Town Law, Article 6, the objectors are without the standing which is conferred upon objectors by the Election Law, Article 6. Accordingly, the court holds they are neither necessary parties nor indispensable parties to these proceedings. Their objections were given serious and respectful consideration by the * * * Town officials and by this court. Since they were misjoined by the petitioners, notwithstanding this court's determination, they may remain in the proceeding (CPLR 1003). However, objector Kennedy's motion to cross-petition against the Town Clerk as earlier noted, must be denied." We disagree with the Supreme Court's holding in this regard.

Initially, we note, as did the Supreme Court, that Kennedy and Artale, who filed general and specific objections to the petitions with the town clerk, are not necessary or indispensable parties to these proceedings since Town Law § 81, governing the submission of petitions to place a proposition on the ballot, has no procedural equivalent to Election Law § 6-154 concerning the filing of objections. Nevertheless, it would be grossly inequitable to deny standing to any qualified elector of the Town of Oyster Bay to challenge the town clerk's determination regarding the validity of such a petition purely because

of the absence of any explicit statutory mechanism to file objections. Under the circumstances, objectors Kennedy and Artale were subject to permissive joinder (CPLR 1002), and, indeed, they were named and served in these proceedings. Since personal jurisdiction was acquired over Kennedy who thereafter served an answer, it was error for the Supreme Court to reject his attempt, by way of a cross petition, to challenge the town clerk's determination validating the 4,191 signatures. Accordingly, upon remittal of this matter, the Supreme Court should review the town clerk's determination in that regard.

In the event that the Supreme Court, upon remittitur, concludes that the petition contains the requisite number of valid signatures, we further find that the timetable for holding a special election upon the proposed referendum is governed by Town Law § 81 (4). Under that section, which was last amended in 1984 (L 1984, ch 434, § 15), the special election must be held "not less than sixty days, nor more than seventy-five days after the filing of such petition". On this point, we reject the appellants' contention that Local Laws, 1966, No. 5 of Town of Oyster Bay governs the timing of the special election. That local law, which was adopted in 1966, amended the last two sentences of the then-existing provisions of Town Law § 81 (4) in its applicability to the Town of Oyster Bay and provided for a greater time period for the scheduling of the special election. Under the local law, the timing of a special election was extended to "not less than one hundred twenty days, nor more than one hundred eighty days after the filing of [the] petition". Significantly, the prefatory language of Local Laws, 1966, No. 5 of Town of Oyster Bay specifically stated: "Section eighty-one of the Town Law, as last amended by chapter eight hundred eighty-nine of the laws of nineteen hundred sixty-five, is hereby amended in its application to the town of Oyster Bay, New York, to read as follows:"

At the time Local Laws, 1966, No. 5 of Town of Oyster Bay was enacted, the provisions of Town Law § 81 (4) as it then existed differed from the present statute in two respects. Firstly, the former subdivision (4), as amended in 1965 (L 1965, ch 889), provided that the "petition shall be subscribed and authenticated, in the manner provided by the election law for the authentication of *designating* petitions" (emphasis added). Secondly, the time period for calling a special election under the former subdivision was "not less than thirty days, nor more than forty days after the filing of such petition". In 1984, Town Law § 81 (4) was amended to provide that the

authentication of petitions under that section was to comply with the Election Law requirement for *nominating,* as opposed to *designating,* petitions (L 1984, ch 140, § 2). Additionally, the time period for elections was amended to the current period of "not less than sixty days, nor more than seventy-five days" (L 1984, ch 434, § 15). No subsequent reenactment by the town board of the substance of Local Laws, 1966, No. 5 of Town of Oyster Bay occurred. Thus, since the repeal of a statute "includes a statute amendatory of the statute repealed" (General Construction Law § 91), it is clear that Local Laws, 1966, No. 5 of Town of Oyster Bay, which specifically amended the prior provisions of the Town Law, is no longer viable.

Finally, in regard to the scheduling of a special election, if indeed such an election is required, we also conclude that the Supreme Court erred in directing that the proposed referendum be placed on the ballot for the November 4, 1986, general election. Town Law § 82 specifically confers upon the town board the discretion to determine when the required special election shall be held, provided of course, that it is held within the prescribed timetable. The only time when a town board is required to submit a proposition at a general election is when the general election is held in a biennial town election year (Town Law § 81 [4]). All the parties concede that such is not the case at bar. Thus, we find that by directing that the proposed referendum be placed on the general election ballot, the Supreme Court usurped the town board's legislative authority. Mollen, P. J., Mangano, Brown and Kooper, JJ., concur.